FTB:SKW/RMS
F. #2023R00257

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                            Case No. 23-CR-179 (WFK)

JULIAN GONZALEZ,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

# THE GOVERNMENT'S MEMORANDUM
## OF LAW IN SUPPORT OF ITS MOTIONS *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Sara K. Winik
Rebecca M. Schuman
Assistant U.S. Attorneys
    (Of Counsel)

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT BACKGROUND ................................................................................. 2

    I.      THE OFFENSE CONDUCT ..................................................................... 2

    II.    THE CHARGED CRIME .......................................................................... 3

ARGUMENT ........................................................................................................... 5

    I.      THE COURT SHOULD ADMIT EVIDENCE OF DEFENDANT'S
          INVOLVEMENT IN NARCOTICS DISTRIBUTION AS DIRECT
          EVIDENCE OF THE CHARGED CRIME OR, IN THE
          ALTERNATIVE, PURSUANT TO RULE 404(B) ...................................... 5

          A.    Applicable Law ................................................................................ 5

               1.    Direct Evidence Admissible Under Rule 403 ................................. 5

               2.    Evidence Admissible Pursuant to Rule 404(b) .............................. 7

          B.    Discussion ....................................................................................... 7

               1.    The Uncharged Conduct is Admissible as Direct
                      Evidence ........................................................................................ 8

               2.    The Uncharged Conduct is Admissible Under Rule
                      404(b) ......................................................................................... 10

    II.    THE COURT SHOULD PRECLUDE DEFENDANT FROM
          INTRODUCING HIS OWN OUT-OF-COURT STATEMENTS. ..................... 12

          A.    Applicable Law .............................................................................. 12

          B.    Discussion ..................................................................................... 14

    III.   THE COURT SHOULD ADMIT SELF-AUTHENTICATING
          RECORDS WITHOUT A CUSTODIAL WITNESS ........................................ 14

          A.    Applicable Law .............................................................................. 14

          B.    Discussion ..................................................................................... 16

    IV.   THE COURT SHOULD ADMIT EVIDENCE OF DEFENDANT'S
          FLIGHT FROM LAW ENFORCEMENT AS EVIDENCE OF
          CONSCIOUSNESS OF GUILT. ................................................................. 17

          A.    Applicable Law .............................................................................. 17

i

B.      Discussion ................................................................................... 17

V.      SHOULD DEFENDANT CHOOSE TO TESTIFY, THE COURT
        SHOULD PERMIT CROSS-EXAMINATION REGARDING HIS
        PRIOR CONVICTIONS ................................................................ 19

        A.      Applicable Law .................................................................... 20

        B.      Discussion ........................................................................... 21

VI.     DEFENDANT SHOULD BE PRECLUDED FROM ARGUING
        THAT HIS ATTEMPT TO DESTROY DEFENDANT'S PHONE
        WAS HARMLESS. ........................................................................ 24

VII.    DEFENDANT SHOULD NOT BE PERMITTED TO PRESENT
        EVIDENCE OR ARGUMENT CONCERNING POSSIBLE
        PUNISHMENT AND COLLATERAL CONSEQUENCES. ............. 25

VIII.   THE COURT SHOULD PRECLUDE QUESTIONING REGARDING
        THE IDENTITY AND BACKGROUND OF A CONFIDENTIAL
        INFORMANT. ................................................................................ 26

        A.      Applicable Law .................................................................... 26

        B.      Discussion ........................................................................... 27

IX.     DEFENDANT SHOULD BE PRECLUDED FROM INTRODUCING
        EVIDENCE OF A PRIOR CRIMINAL CASE THAT WAS
        DISMISSED. .................................................................................. 28

        A.      Applicable Law .................................................................... 28

        B.      Discussion ........................................................................... 29

X.      DEFENDANT SHOULD BE PRECLUDED FROM LITIGATING
        LEGAL ISSUES BEFORE THE JURY. .......................................... 30

CONCLUSION .................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

Ayala v. Speckard,
    131 F.3d 62 (2d Cir. 1997) ................................................................................ 27

Ciminelli v. United States,
    598 U.S. 306 (2023) .......................................................................................... 5

Daniels v. Loizzo,
    986 F. Supp. 245 (S.D.N.Y. 1997) .................................................................... 22

Delaware v. Van Arsdall,
    475 U.S. 673 (1986) .......................................................................................... 27

Jones v. City of New York,
    No. 98-CV-6493 (LBS), 2002 WL 207008 (S.D.N.Y. Feb. 11, 2002) ................. 20

Jones v. N.Y. City Health & Hosps. Corp.,
    102 F. App'x 223 (2d Cir. 2004) ........................................................................ 21

Melendez-Diaz v. Massachusetts,
    557 U.S. 305 (2009) .......................................................................................... 15

Old Chief v. United States,
    519 U.S. 172 (1997) ..................................................................................... 6, 22

Palmieri v. Defaria,
    88 F.3d 136 (2d Cir. 1996) ................................................................................. 5

Roviaro v. United States,
    353 U.S. 53 (1957) ....................................................................................... 26, 27

Scher v. United States,
    305 U.S. 251 (1938) .......................................................................................... 26

Shannon v. United States,
    512 U.S. 573 (1994) .......................................................................................... 25

United States v. Alexander,
    48 F.3d 1477 (9th Cir. 1995) ............................................................................. 23

United States v. Al-Farekh,
    810 F. App'x 21 (2d Cir. 2020) ......................................................................... 27

United States v. Al-Sadawi,
    432 F. 3d 419 (2d Cir. 2005) ................................................................. 17, 18, 19

United States v. Anderson,
    563 F. Supp. 3d. 691 (E.D. Mich. Sept. 27, 2021) ............................................ 15

United States v. Anderson,
    575 F. Supp. 31 (S.D.N.Y. 1983) ...................................................................... 18

United States v. Annabi,
    No. 10-CR-7 (CM), 2012 WL 489111 (S.D.N.Y. Feb. 14, 2012) ........................ 13

United States v. Ashburn,
    No. 11-CR-303 (NGG), 2015 WL 729818 (E.D.N.Y. Feb. 19, 2015) ................... 28

United States v. Barret,
    824 F. Supp. 2d 419 (E.D.N.Y. 2011) ............................................................... 27

United States v. Binday,
 804 F.3d 558 (2d Cir. 2015) ................................................................ 4, 9
United States v. Blake,
 195 F. Supp. 3d 605 (S.D.N.Y. 2016) .......................................................... 13
United States v. Bracy,
 No. 20-CR-483 (ARR), 2022 WL 17801133 (E.D.N.Y. Dec. 19, 2022) .................... 29
United States v. Brooks,
 828 F. App'x 9 (2d Cir. 2020) .................................................................. 8
United States v. Brown,
 606 F. Supp. 2d 306 (E.D.N.Y. 2009) .................................................... 20, 21
United States v. Carboni,
 204 F.3d 39 (2d Cir. 2000) ................................................................ 6, 10
United States v. Cardascia,
 951 F.2d 474 (2d Cir. 1991) .................................................................. 13
United States v. Chandler,
 No. 19-CR-867 (PAC), 2021 WL 1851996 (S.D.N.Y. May 10, 2021) ........................ 22
United States v. Cianci,
 378 F.3d 71 (1st Cir. 2004) .................................................................. 13
United States v. Colon,
 880 F.2d 650 (2d Cir. 1989) .................................................................. 7
United States v. Concepcion,
 983 F.2d 369 (2d Cir. 1992) .................................................................. 8
United States v. Coonan,
 938 F.2d 1553 (2d Cir. 1991) .............................................................. 8, 10
United States v. Crumble,
 No. 18-CR-32 (ARR), 2018 WL 2016852 (E.D.N.Y. May 1, 2018) ........................ 22
United States v. Davidson,
 308 F. Supp. 2d 461 (S.D.N.Y. 2004) .......................................................... 13
United States v. Davis,
 No. 18-CR-131 (TMB), 2021 WL 1931871 (D. Alaska May 13, 2021) .................... 15
United States v. Desposito,
 704 F.3d 221 (2d Cir. 2013) .................................................................. 4
United States v. Diallo,
 461 F. App'x 27 (2d Cir. 2012) .......................................................... 17, 18
United States v. DiMaria,
 727 F.2d 265 (2d Cir. 1984) .................................................................. 13
United States v. Downing,
 297 F.3d 52 (2d Cir. 2002) .................................................................. 7
United States v. Dunnican,
 961 F.3d 859 (6th Cir. 2020) .................................................................. 15
United States v. Elfgeeh,
 515 F.3d 100 (2d Cir. 2008) .................................................................. 27
United States v. Elmaani,
 No. 20-CR-661 (CM), 2023 WL 2770742 (S.D.N.Y. Apr. 4, 2023).......................... 13
United States v. Estrada,
 430 F.3d 606 (2d Cir. 2005) ............................................................ 20, 21, 22

iv

United States v. Fields,
    113 F.3d 313 (2d Cir. 1997) ................................................................. 27

United States v. Gambino,
    818 F. Supp. 536 (E.D.N.Y. 1993) ................................................. 29, 30

United States v. Garcia,
    291 F.3d 127 (2d Cir. 2002) ................................................................... 7

United States v. Gonzalez,
    110 F.3d 936 (2d Cir. 1997) ............................................................ 6, 28

United States v. Hayes,
    553 F.2d 824 (2d Cir. 1977) .......................................................... 20, 22

United States v. Howard,
    998 F.2d 42 (2d Cir. 1993) ................................................................... 30

United States v. Inserra,
    34 F.3d 83 (2d Cir. 1994) ....................................................................... 6

United States v. Jackson,
    345 F.3d 59 (2d Cir. 2003) ................................................................... 27

United States v. Jimenez,
    214 F.3d 1095 (9th Cir. 2000) ............................................................. 20

United States v. Jimenez,
    789 F.2d 167 (2d Cir. 1986) ................................................................. 11

United States v. Johnson,
    903 F.2d 1084 (7th Cir. 1990) ............................................................. 24

United States v. Jones,
    808 F.2d 561 (7th Cir. 1986) ............................................................... 29

United States v. Komasa,
    767 F.3d 151 (2d Cir. 2014) ................................................................. 14

United States v. Levy,
    731 F.2d 997 (2d Cir. 1984) ............................................................ 7, 11

United States v. Maggitt,
    784 F.2d 590 (5th Cir. 1986) ............................................................... 24

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982) ................................................................... 12

United States v. McDaniel,
    398 F.3d 540 (6th Cir. 2005) ............................................................... 13

United States v. Mickens,
    926 F.2d 1323 (2d Cir. 1991) ................................................................. 7

United States v. Misla-Aldarondo,
    478 F.3d 52 (1st Cir. 2007) ..................................................................... 4

United States v. Netschi,
    511 F. App'x 58 (2d Cir. 2013) ............................................................ 13

United States v. Ortiz,
    553 F.2d 782 (2d Cir. 1977) .......................................................... 22, 23

United States v. Ortiz,
    857 F.2d 900 (2d Cir. 1988) ................................................................... 7

United States v. Payton,
    159 F.3d 49 (2d Cir. 1998) ................................................................... 21

United States v. Persico,
    645 F.3d 85 (2d Cir. 2011) ......................................................................................... 4, 8
United States v. Pitre,
    960 F.2d (2d Cir. 1992) ............................................................................................... 7
United States v. Pugh,
    945 F.3d 9 (2d Cir. 2019) ............................................................................................. 4
United States v. Qualls,
    613 F. App'x 25 (2d Cir. 2015) ................................................................................... 15
United States v. Quattrone,
    441 F.3d 153 (2d Cir. 2006) ...................................................................................... 4, 9
United States v. Roldan-Zapata,
    916 F.2d 795 (2d Cir. 1990) ....................................................................................... 11
United States v. Sampson,
    No. 13-CR-269 (DLI), 2015 WL 2066073 (E.D.N.Y. May 4, 2015) ...................................... 11
United States v. Schlussel,
    No. 08-CV-694 (JFK), 2009 WL 413605 (S.D.N.Y. Feb. 11, 2009) ..................................... 18
United States v. Siegel,
    536 F.3d 306 (4th Cir. 2008) ...................................................................................... 11
United States v. Simpson,
    741 F.3d 539 (5th Cir. 2014) ........................................................................................ 9
United States v. Smith,
    131 F.3d 685 (7th Cir. 1997) ...................................................................................... 20
United States v. Steele,
    390 F. App'x 6 (2d Cir. 2010) ................................................................................ 17, 19
United States v. Stein,
    473 F. Supp. 2d 597 (S.D.N.Y. 2007) ......................................................................... 30
United States v. Thai,
    29 F.3d 785 (2d Cir. 1994) ........................................................................................... 6
United States v. Thomas,
    214 F. Supp. 3d 187 (E.D.N.Y. 2016) ..................................................................... 10, 23
United States v. Towne,
    870 F.2d 880 (2d Cir. 1989) ........................................................................................ 6
United States v. Triumph,
    266 F. App'x 53 (2d Cir. 2008) .................................................................................. 17
United States v. Viserto,
    596 F.2d 531 (2d Cir. 1979) .................................................................................. 28, 29
United States v. Vrancea,
    No. 12-CR-198 (WFK), 2013 WL 57687 (E.D.N.Y. Jan. 4, 2013) ................................... 3, 24
United States v. Watson,
    599 F.2d 1149 (2d Cir. 1979) ..................................................................................... 27
United States v. Watts,
    934 F. Supp. 2d 451 (E.D.N.Y. 2013) ......................................................................... 25
United States v. White,
    312 F. Supp. 3d 350 (E.D.N.Y. 2018) ..................................................................... 21, 22
United States v. White,
    No. 08–CR–682 (NGG), 2009 WL 4730234 (E.D.N.Y. Dec. 4, 2009) ................................. 23

United States v. Willoughby,
  860 F.2d 15 (2d Cir. 1988) ........................................................... 11, 12
United States v. Wilson,
  11 F.3d 346 (2d Cir. 1993) ................................................................ 30
United States v. Wilson,
  796 F.2d 55 (4th Cir. 1986) ............................................................... 24
United States v. Yousef,
  327 F.3d 56 (2d Cir. 2003) ................................................................ 12

## **Statutes**

18 U.S.C. § 841(a)(1)........................................................................... 19
18 U.S.C. § 846 ............................................................................. 19, 28
18 U.S.C. § 1512(c)(1)........................................................................ 24
18 U.S.C. § 1512(f).............................................................................. 4
18 U.S.C. § 1515(a)(1).......................................................................... 4
21 U.S.C. § 843(b) ............................................................................. 19

## **Rules**

Fed. R. Evid. 104 .............................................................................. 31
Fed. R. Evid. 401 ............................................................................. 5, 6
Fed. R. Evid. 402 ............................................................................. 5, 6
Fed. R. Evid. 403 ....................................................................... 5, 25, 30
Fed. R. Evid. 404(b) ........................................................................... 11
Fed. R. Evid. 404(b)(2) ........................................................................ 7
Fed. R. Evid. 609(a)(1)(B) .................................................................... 20
Fed. R. Evid. 801(d)(2)(A) .................................................................... 12
Fed. R. Evid. 803(3) ........................................................................... 13
Fed. R. Evid. 803(6) ...................................................................... 14, 16
Fed. R. Evid. 803(22) ......................................................................... 29
Fed. R. Evid. 902(11) ......................................................................... 16
Fed. R. Evid. 902(14) ......................................................................... 15
Federal Rules of Evidence 902(13)............................................................ 15

## PRELIMINARY STATEMENT

The defendant Julian Gonzalez ("Defendant") is charged with attempted obstruction of justice for his efforts to destroy his cellular telephone to prevent the Federal Bureau of Investigation ("FBI") from executing a judicially authorized search warrant (the "Search Warrant"). To prove these charges, the government intends to introduce testimony from several law enforcement witnesses, surveillance footage, physical evidence, photographs, and other evidence.

The government respectfully submits these motions in limine both to admit specific categories of evidence and to preclude Defendant from presenting certain arguments or evidence to the jury. The government seeks to: (1) admit evidence related to Defendant's involvement in narcotics distribution; (2) admit self-authenticating records without a custodial witness; (3) admit evidence of Defendant's pre-arrest flight as consciousness of guilt; and (4) cross-examine Defendant regarding his prior felony convictions in the event that he chooses to testify. The government seeks to preclude Defendant from: (1) admitting his own out-of-court statements; (2) arguing that his attempt to destroy his cellular telephone was harmless; (3) making any argument that references punishment or collateral consequences Defendant may face upon conviction; (4) introducing any evidence or soliciting any testimony regarding the identity and background of a confidential informant; (5) introducing evidence about or otherwise referencing a prior criminal case that was dismissed; and (6) litigating legal issues before the jury.

<u>RELEVANT BACKGROUND</u>

I.    <u>THE OFFENSE CONDUCT</u>

The government expects to establish the following facts at trial.[1]

On March 17, 2023, the FBI obtained the Search Warrant to search and seize a cellular telephone assigned to a specific telephone number that was subscribed to and used by Defendant ("Defendant's Phone").  The Search Warrant authorized agents to search Defendant's Phone for evidence of violations of Title 21, United States Code, Sections 841 (narcotics distribution) and 846 (conspiracy to commit the same).

At approximately 8:45 p.m. on March 17, 2023, Defendant arrived at John F. Kennedy International Airport ("JFK") in Queens, New York aboard an international flight. Shortly thereafter, officers with United States Customs and Border Protection ("CBP") escorted Defendant to a private room at JFK for secondary inspection.  Agents with the FBI then approached Defendant, identified themselves as FBI agents, and informed Defendant that the FBI had a warrant to search Defendant's Phone.  The FBI agents also provided Defendant with a copy of the Search Warrant.  Defendant then handed a cellular telephone to the FBI agents, who confirmed it was the device subject to search and seizure by the Search Warrant by dialing the number associated with Defendant's Phone from a separate telephone and observing that the device provided by Defendant received the call.  At that time, FBI agents did not observe any physical damage on Defendant's Phone.

Pursuant to the Search Warrant, the FBI agents manually examined the contents of Defendant's Phone in Defendant's presence and located, among other things, communications in

---

[1]    The proffer of facts set forth herein is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.

an encrypted messaging application that appeared to relate to the distribution of narcotics.  During this review, Defendant asked to call his wife and indicated he needed to use Defendant's Phone because he did not know her telephone number.  When the agents agreed and handed Defendant's Phone to Defendant, Defendant proceeded to slam Defendant's Phone on the ground and moved aggressively towards Defendant's Phone, as if intending to step on it.  Defendant was restrained by CBP officers and FBI agents before he could reach Defendant's Phone again.

Defendant was released that same evening.  Instead of returning to his home in New York City, Defendant stayed at more than one hotel in the New York metropolitan area over the following days, until his arrest for the commission of the charged offense.

On March 22, 2023, a complaint was issued charging Defendant with obstruction of justice.  ECF No. 1.  He subsequently was arrested by law enforcement on March 26, 2023.  See ECF No. 4.  On April 24, 2024, a grand jury sitting in the Eastern District of New York returned a one-count indictment (the "Indictment") charging Defendant with attempted obstruction of justice.  ECF No. 12.

## II.    THE CHARGED CRIME

Defendant has been charged with violating Title 18, United States Code, Section 1512(c)(1), which, in relevant part, criminalizes "corruptly" attempting to alter or destroy an object "with the intent to impair the object's integrity or availability for use in an official proceeding." The elements of the offense are (1) that at the time of the defendant's conduct, "an official proceeding was pending, was about to begin, or was reasonably foreseeable; (2) that the [d]efendant acted knowingly and corruptly to destroy evidence; and (3) that the [d]efendant did so with the intent of impairing the object(s)' use in the official proceeding."  United States v. Vrancea, No. 12-CR-198 (WFK), 2013 WL 57687, *2 (E.D.N.Y. Jan. 4, 2013).

To satisfy the element of corrupt intent, the government must prove that there is a nexus between the obstructive conduct and the official proceeding. United States v. Desposito, 704 F.3d 221, 230 (2d Cir. 2013). "The touchstone for the nexus requirement . . . is an act taken that would have the natural and probable effect of interfering with a judicial or grand jury proceeding that constitutes the administration of justice; that is, the act must have a relationship in time, causation, or logic with the judicial proceedings." United States v. Quattrone, 441 F.3d 153, 171 (2d Cir. 2006) (internal quotation marks omitted).

"Official proceeding," for these purposes, is defined to include "a proceeding before a judge or court of the United States, a United States magistrate judge, . . . or a Federal grand jury." 18 U.S.C. § 1515(a)(1). It is not necessary that an official proceeding "be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f). Rather, it is sufficient that an official proceeding "was reasonably foreseeable to the defendant." United States v. Pugh, 945 F.3d 9, 21 (2d Cir. 2019) (internal quotation marks omitted). The Second Circuit has held that a grand jury proceeding is foreseeable if "the defendant was aware that he was the target of an investigation," United States v. Persico, 645 F.3d 85, 108 (2d Cir. 2011); see also, e.g., Pugh, 945 F.3d at 22; Desposito, 704 F.3d at 230–31; accord United States v. Misla-Aldarondo, 478 F.3d 52, 70 (1st Cir. 2007) (finding that a defendant charged with obstruction could foresee judicial proceedings based on his belief that he was the target of an ongoing investigation), but a defendant need not know about a particular federal grand jury investigation for one to be foreseeable, see, e.g., United States v. Binday, 804 F.3d 558, 591 (2d Cir. 2015) (concluding that the defendants' efforts to destroy evidence once they learned that their crime was the subject of an FBI investigation "provides a sufficient basis for the jury to find that their conduct had the natural and probable effect of interfering with a judicial or grand jury proceeding," even where such a

proceeding had not yet commenced or been discussed with the defendants (internal quotation marks omitted)), abrogated on other grounds by Ciminelli v. United States, 598 U.S. 306 (2023).

ARGUMENT

The government submits these motions in limine to "aid the trial process by enabling the court to rule in advance of trial on the relevance of certain forecasted evidence." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996).

I.    THE COURT SHOULD ADMIT EVIDENCE OF DEFENDANT'S INVOLVEMENT IN NARCOTICS DISTRIBUTION AS DIRECT EVIDENCE OF THE CHARGED CRIME OR, IN THE ALTERNATIVE, PURSUANT TO RULE 404(B).

The government moves to admit at trial certain evidence related to Defendant's involvement in narcotics distribution as direct evidence of the charged crime or, in the alternative, pursuant to Federal Rule of Evidence 404(b).

A.    Applicable Law

1.    Direct Evidence Admissible Under Rule 403

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Notably, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Moreover, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, trial judges are called upon to perform an analysis of whether the evidence in question is relevant, and if relevant, to determine whether its probative value is substantially outweighed by the risks outlined in Rule 403.

"To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). As such, "[r]elevant evidence is not confined to that which directly establishes an element of the crime." Id.; see also Fed. R. Evid. 401, 402. Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determination "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

Moreover, it is well settled that evidence of uncharged acts, even ones that amount to criminal activity, can be admissible as direct evidence of the charged crime. See, e.g., United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989). "'[E]vidence of uncharged criminal activity is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inexorably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" Carboni, 204 F.3d at 44 (quoting Gonzalez, 110 F.3d at 942).

The Second Circuit has interpreted this category of evidence to include acts that provide necessary background or context for a charged crime. See, e.g., United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

2.  Evidence Admissible Pursuant to Rule 404(b)

Evidence of uncharged crimes or "other acts" may be admitted pursuant to Rule 404(b) for a number of permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Fed. R. Evid. 404(b)(2); see also United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988).

The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and applies an "inclusionary or positive approach" to admitting "other acts" evidence.  See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (citing United States v. Pitre, 960 F.2d at 1112, 1118 (2d Cir. 1992)); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").  A party must satisfy three requirements for evidence of "other crimes, wrongs or acts" to be admitted under the rule.  First, the evidence must be offered for a purpose other than to prove a defendant's bad character or criminal propensity. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989).  Second, the evidence must be relevant under Rules 401 and 402, and not run afoul of Rule 403.  See Mickens, 926 F.2d at 1328; Ortiz, 857 F.2d at 903; Levy, 731 F.2d at 1002.  Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction. See United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002).

B.  Discussion

At trial, the government anticipates calling witnesses who will testify (i) the FBI obtained the Search Warrant in connection with an investigation into Defendant's involvement in narcotics distribution; (ii) when initially executing the Search Warrant, FBI agents—in the

presence of Defendant—observed on Defendant's Phone communications that appeared to relate to narcotics distribution; and (iii) following Defendant's arrest, the FBI uncovered additional evidence of Defendant's involvement in drug trafficking, including the recovery from Defendant's vehicle of a bag that subsequently tested positive for cocaine residue (collectively, the "Uncharged Conduct").

### 1. The Uncharged Conduct is Admissible as Direct Evidence

Although evidence of the Uncharged Conduct "does not directly establish an element of the offense charged," the testimony proffered above is admissible "to provide background for the events alleged in the indictment."  United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991).  Specifically, the above-proffered testimony and associated exhibits— including photographs the FBI agents took of the messages they observed on Defendant's Phone regarding his involvement in drug trafficking—tend to prove at least three facts material to the government's case-in-chief.  Cf. United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992) (explaining that evidence is "not other act evidence within the meaning of Rule 404(b)" if it is "admissible to prove material facts other than [the defendant's] propensity to commit a crime").

First, evidence that Defendant attempted to destroy Defendant's Phone immediately after being informed of the Search Warrant, reading the Search Warrant, and seeing the FBI agents locate responsive evidence on Defendant's Phone regarding drug trafficking shows that Defendant was aware "that he was the target of an investigation" such that an official proceeding "was thus foreseeable."  Persico, 645 F.3d 85 at 108; see also, e.g., United States v. Brooks, 828 F. App'x 9, 11–12 (2d Cir. 2020) (summary order) (finding "there was more than sufficient evidence for the jury to conclude that [the defendant] knew that his actions were likely to affect an ongoing investigation" because he was aware "that officials were investigating [a]

scheme in which he participated and about which he possessed incriminating evidence" (alteration and internal quotation marks omitted); Binday, 804 F.3d at 591 (finding "sufficient evidence of foreseeability" where the defendant "knew that the subject of the FBI's inquiries was in fact a . . . scheme in which he participated and about which he possessed incriminating documents"); accord United States v. Simpson, 741 F.3d 539, 552 (5th Cir. 2014) (finding a grand jury proceeding was reasonably foreseeable to a business owner who ordered the deletion of emails after learning about the execution of search warrants for his company).

Second, evidence of the Uncharged Conduct shows that Defendant's attempt to destroy Defendant's Phone had a clear logical and temporal nexus to this foreseeable official proceeding.  Indeed, Defendant's obstructive conduct occurred while FBI agents were executing the Search Warrant, as he observed the FBI agents review incriminating communications that he— as the user of Defendant's Phone—would know related to his narcotics distribution.  See Quattrone, 441 F.3d at 171 (explaining that "the act must have a relationship in time, causation, or logic with the judicial proceedings" (internal quotation marks omitted)).  This relationship is significantly closer in time, causation, and logic than the relationship found sufficient in Quattrone, where the defendant sent an email to his staff endorsing a suggestion to destroy documents that might eventually be subpoenaed by a grand jury.  441 F.3d at 166, 172.

Third, the evidence at issue tends to show that Defendant's intent was corrupt, as required for a conviction under § 1512(c).  The fact that Defendant attempted to destroy Defendant's Phone shortly after learning of the Search Warrant and while FBI agents were reviewing the contents of a device he knew contained incriminating evidence plainly shows that he was trying to protect himself and his co-conspirators from criminal exposure by obstructing the administration of justice.  See, e.g., id. at 173 (concluding "[t]here was . . . sufficient evidence

from which the jury could conclude beyond a reasonable doubt that [the defendant] acted with corrupt intent" where the defendant's conduct occurred after he learned of a grand jury subpoena). Indeed, the evidence of drug trafficking recovered by the FBI following Defendant's arrest further establishes that Defendant knew of his criminal exposure and had motive to interfere with the FBI's investigation.

Furthermore, evidence of the Uncharged Conduct "is necessary to complete the story of the crime on trial." Carboni, 204 F.3d at 44 (internal quotation marks omitted). To begin the narrative of the trial at the point where Defendant slammed Defendant's Phone on the ground in a room at JFK, without offering any explanation for his presence there or the relevance of Defendant's Phone, would confuse the jury and provide an incomplete picture of relevant events. The jury needs additional context to understand Defendant's actions as charged in the Indictment. See Coonan, 938 F.2d at 1561 (explaining that "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed" (citation and internal quotation marks omitted)); United States v. Thomas, 214 F. Supp. 3d 187, 193 (E.D.N.Y. 2016) (admitting evidence regarding the defendant's alleged involvement in a crime that occurred on the same day as the charged crime as "inextricably intertwined . . . and will provide crucial background information to the jury about events that occurred the day of the charged crime").

Accordingly, the Court should admit evidence of the Uncharged Conduct as direct evidence of the charged crime.

2.   The Uncharged Conduct is Admissible Under Rule 404(b)

Alternatively, even if the Court finds that the Uncharged Conduct is not direct evidence of the charged crime, such evidence is admissible under Rule 404(b) because it shows

Defendant's motive, opportunity, intent, absence of mistake, or lack of accident in attempting to destroy Defendant's Phone.  Fed. R. Evid. 404(b); see also Levy, 731 F.2d at 1002.  Evidence of the Uncharged Conduct clearly shows Defendant had a motive to destroy Defendant's Phone, and intended to do so, in order to prevent law enforcement from accessing incriminating evidence related to his involvement in the distribution of narcotics.  See United States v. Willoughby, 860 F.2d 15, 24 (2d Cir. 1988) ("[W]hen a defendant has been charged with attempted or actual obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant's part in it is admissible to show the motive for his efforts to interfere with the judicial processes."); see also United States v. Sampson, No. 13-CR-269 (DLI), 2015 WL 2066073, at *3 (E.D.N.Y. May 4, 2015) (same).  In Willoughby, the Second Circuit affirmed, under Rule 404(b), the admission of evidence that the defendants "had participated in [a] robbery" as "highly probative of their motive, and the intensity of that motive, to seek to prevent certain witnesses from testifying at their trial for robbery."  860 F.2d at 24; accord United States v. Siegel, 536 F.3d 306, 318 (4th Cir. 2008) (finding evidence of other crimes admissible under Rule 404(b) as "relevant to establishing [the defendant's] motive for killing [a witness to those other crimes]").  Similarly, this evidence shows an "absence of mistake" or "accident," tending to disprove that Defendant's conduct in slamming Defendant's Phone was somehow a careless error.

### 3.  Probative Value Outweighs Any Prejudice under Rule 403

Whether as direct evidence or Rule 404(b) evidence, the Uncharged Conduct is unmistakably probative as to Defendant's guilt, and it is not unfairly prejudicial simply because it is "harmful" to him.  United States v. Jimenez, 789 F.2d 167, 171 (2d Cir. 1986).  Indeed, the evidence at issue does "not involve conduct any more sensational or disturbing" than the obstruction with which Defendant is charged.  United States v. Roldan-Zapata, 916 F.2d 795, 804

(2d Cir. 1990); see also Willoughby, 860 F.2d at 24 (concluding that "the trial court did not abuse its discretion in concluding that [the] probative value [of evidence the defendants committed a robbery] outweighed any undue prejudice" in prosecution for obstruction of justice). Admission of evidence of the Uncharged Conduct, therefore, would not violate Rule 403, and there thus is no basis for exclusion.

Accordingly, the Court should permit the government to introduce evidence of the Uncharged Conduct at trial.

## II.    THE COURT SHOULD PRECLUDE DEFENDANT FROM INTRODUCING HIS OWN OUT-OF-COURT STATEMENTS.

### A.    Applicable Law

The Court should preclude Defendant from admitting any of his own out-of-court statements—including self-serving explanations that may have been offered to law enforcement at the time of the obstructive conduct—either on cross-examination or in his case-in-chief because such statements constitute inadmissible hearsay.

A defendant generally is prohibited from introducing his own out-of-court statements at trial. See United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) (explaining that "while the [g]overnment was free to introduce the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on his own" (citations omitted)); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").[2] Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand

---

[2]    In contrast, the government generally may introduce a defendant's statements because a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A).

scrutiny by the jury." United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005).  Indeed, a defendant may not offer his own prior hearsay statements in an "attempt to get [his] side of the . . . story in front of the jury without him[self] testifying and opening him[self] up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

Nor, except in extremely limited circumstances, may a defendant introduce his own out-of-court statements as evidence of his then-existing state of mind under Rule 803(3) of the Federal Rules of Evidence.  This hearsay exception allows into evidence only "[a] statement of the declarant's then-existing state of mind . . . but not including a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3).  "[T]o fall within Rule 803(3)'s 'state of mind' hearsay exception, the statements sought to be introduced must relate to the declarant's state of mind during the [illegal conduct]," not what the declarant "said or did after the [illegal conduct] had taken place." United States v. Netschi, 511 F. App'x 58, 61 (2d Cir. 2013). In other words, the "exception applies only to statements that 'face forward, rather than backward.'" United States v. Elmaani, No. 20-CR-661 (CM), 2023 WL 2770742, at *6 (S.D.N.Y. Apr. 4, 2023) (quoting United States v. DiMaria, 727 F.2d 265, 271 (2d Cir. 1984)); see also, e.g., United States v. Cardascia, 951 F.2d 474, 487 (2d Cir. 1991).  For that reason, "self-serving explanation[s] of past events" are not admissible under Rule 803(3).  United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (refusing to admit a defendant's self-exculpatory statements about his past conduct); see also United States v. Annabi, No. 10-CR-7 (CM), 2012 WL 489111, at *2 (S.D.N.Y. Feb. 14, 2012) (explaining that the defendant's "ex post facto justifications for" certain conduct constituted inadmissible hearsay); accord United States v. Cianci, 378 F.3d 71, 106 (1st Cir. 2004) (affirming exclusion of the defendant's out-of-court statement that, "at least in

part, applied to past acts . . . and were to a large extent 'self-serving' attempts to cover tracks already made").

B.    <u>Discussion</u>

The law is clear: Defendant may not introduce his own prior statements via the testimony of other witnesses or via cross-examination because such out-of-court statements would constitute inadmissible hearsay.  Thus, should Defendant wish to inform the jury that he attempted to destroy Defendant's Phone for any reason unrelated to the FBI's investigation, he must take the stand himself and testify.

III.    <u>THE COURT SHOULD ADMIT SELF-AUTHENTICATING RECORDS WITHOUT A CUSTODIAL WITNESS.</u>

The government seeks to admit certain business records through written authentication rather than custodial witnesses.

A.    <u>Applicable Law</u>

Under Federal Rule of Evidence 902(11), evidence can be authenticated through a business record certification without the need to call a records custodian as a witness.  This rule was created "so that the foundation requirements of Rule 803(6) [the business records exception to the hearsay rule] can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses."  <u>United States v. Komasa</u>, 767 F.3d 151, 155 (2d Cir. 2014).  Business records can be authenticated by certificates if: (1) the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; (2) the records were "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling"; and (3) "making the record[s] was a regular practice of that activity."  Fed. R. Evid. 803(6).  Admitting business records that have been authenticated by affidavit or certificate is permissible in criminal cases because it does not violate

a defendant's rights under the Confrontation Clause.  See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."); see also, e.g., United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015).  A certificate meeting the same requirements as a business records certification can also be used to authenticate "data copied from an electronic device, storage medium, or file" such as a cellular telephone.  Fed. R. Evid. 902(14).

Federal Rules of Evidence 902(13) and (14) provide a mechanism for parties to authenticate evidence generated by electronic processes or systems.  These rules combine the conceptual frameworks of Rule 901(b)(9)—authentication by evidence describing a process or system that produces an accurate result—and Rules 902(11) and (12)—self-authentication of business records.  Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification."  Included among these records are forensic images of cellular telephones and other electronic devices.  See, e.g., United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under Rule 902(14)); United States v. Anderson, 563 F. Supp. 3d. 691, 696 (E.D. Mich. Sept. 27, 2021) (finding text messages self-authenticating under Rule 902(14)); United States v. Davis, No. 18-CR-131 (TMB), 2021 WL 1931871, at *2–3 (D. Alaska May 13, 2021) (granting motions in limine to admit electronic evidence in the form of video surveillance under Rule 902(11) and 902(13)).  Excerpts from such records that are

generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, these items of electronic evidence can be authenticated, pursuant to Rule 902(13) and (14), by certification of competent technicians who performed the extractions and generated the copies rather than by the live testimony of those technicians.

B.    Discussion

The government intends to authenticate certain evidence—including hotel records and records from the New York State Department of Motor Vehicles—through business record certifications. Each of these records is accompanied by a certification from a custodian establishing that such records were made at or near the time by (or from information transmitted by) someone with knowledge, were kept in the course of a regularly conducted activity of the business or entity, and that making the record was a regular practice of that business or entity. See Fed. R. Evid. 803(6). Therefore, these records are properly authenticated through business record certifications. See Fed. R. Evid. 902(11). The government has provided Defendant with copies of the relevant certifications currently in its possession, and it will provide any additional certifications upon receipt from the relevant entity.

The government also intends to admit evidence taken from the extraction of Defendant's Phone, which was performed by FBI personnel. In lieu of calling one or more FBI witness to testify about the process of creating the extraction, the government expects to introduce this evidence using a certificate under Rule 902(13) and Rule (14).

16

IV.  **THE COURT SHOULD ADMIT EVIDENCE OF DEFENDANT'S FLIGHT FROM LAW ENFORCEMENT AS EVIDENCE OF CONSCIOUSNESS OF GUILT.**

At trial, the government intends to introduce certain evidence of Defendant's efforts to evade law enforcement following his obstructive conduct during the FBI's execution of the Search Warrant.  Under clearly established Second Circuit precedent, such evidence of flight is admissible to show his consciousness of guilt.

A.  Applicable Law

The Second Circuit repeatedly has held that "[f]light evidence is admissible to show consciousness of guilt." United States v. Triumph, 266 F. App'x 53, 55 (2d Cir. 2008); see also United States v. Steele, 390 F. App'x 6, 12 (2d Cir. 2010) (noting that it is "today universally conceded that the fact of an accused's flight, . . . concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself"); United States v. Al-Sadawi, 432 F. 3d 419, 424 (2d Cir. 2005) ("Flight is an admission by conduct.").  Thus, "[t]he government may introduce evidence of flight to demonstrate consciousness of guilt if a series of inferences can be drawn 'from which the jury can infer consciousness of guilt from flight.'" United States v. Diallo, 461 F. App'x 27, 30 (2d Cir. 2012) (quoting Al-Sadawi, 432 F. 3d at 424).  The admissibility of such evidence depends upon the degree of confidence with which a court can draw four inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." Al-Sadawi, 432 F.3d at 424.

B.  Discussion

Following his commission of the charged offense on March 17, 2023, Defendant stayed at multiple hotels in the New York metropolitan area, rather than his home in New York

City and, at the time of his arrest eight days later, was found in possession of an extra, out-of-state license plate.  The government's evidence in this regard will provide strong support for each of the four inferences outlined in Al-Sadawi.  The anticipated evidence will both clearly establish that Defendant's behavior constituted flight from law enforcement authorities and link his desire to evade law enforcement not only to consciousness of guilt but also specifically his consciousness of guilt concerning the crime charged here.  Indeed, after attempting to destroy Defendant's Phone during the execution of the Search Warrant, Defendant chose not to return to his own Manhattan apartment and resume his normal life, despite having just arrived back in the United States from an international trip; instead, he chose to hide out at hotels in the area, where it would be (and in fact was) more difficult for law enforcement to locate him.  The government should be permitted to argue to the jury that Defendant's consciousness of guilt concerning the charged offense is probative of his actual guilt of the crime: he made the decision to stay in those hotels rather than his established address because he knew he had committed a crime and he did not want to get caught.  Defendant clearly had personal knowledge of his guilt with respect to the charged offense, and his state of mind is thus clearly relevant.  See, e.g., United States v. Schlussel, No. 08-CV-694 (JFK), 2009 WL 413605, at *3 (S.D.N.Y. Feb. 11, 2009) (admitting evidence of consciousness of guilt as probative of actual guilt); United States v. Anderson, 575 F. Supp. 31, 33 (S.D.N.Y. 1983) (same).

The Second Circuit has upheld the admission of evidence concerning flight from law enforcement in circumstances where the evidence supporting the aforementioned inferences was less substantial than in the instant case.  For example, in Diallo, the government established that the defendant requested a travel visa to Sierra Leone after his attorney discussed the charges with government agents but did not introduce any direct evidence that the defendant's intent was

to flee from law enforcement authorities or that his flight concerned the specific charges at issue. 461 F. App'x at 30.  The Second Circuit nonetheless held that the district court properly admitted the evidence of flight.  Id. at 30–31.  Similarly, in Steele, the Second Circuit upheld the admission of evidence of the defendant's flight from law enforcement officers who attempted to arrest him at his apartment, even though the government there produced no direct evidence tying this flight to the defendant's consciousness of guilt concerning the crime charged.  390 F. App'x at 11–12.  Although the defendant proffered an alternative explanation for his flight, namely that he had missed a recent appointment with his parole officer, the Second Circuit concluded that "[w]here the evidence passes the threshold inquiry of relevance, the accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation." 390 F. App'x at 12. Thus, the Second Circuit held that "the evidence was properly admitted."  Id

Here, the government's anticipated evidence of Defendant's flight amply supports the four inferences set forth in Al-Sadawi.  The Court, therefore, should permit the government to introduce such evidence.

V.    SHOULD DEFENDANT CHOOSE TO TESTIFY, THE COURT SHOULD PERMIT CROSS-EXAMINATION REGARDING HIS PRIOR CONVICTIONS.

In September 2002, Defendant pleaded guilty in the Eastern District of Pennsylvania to conspiracy to distribute cocaine, in violation of 18 U.S.C. § 846; distribution of cocaine, in violation of 18 U.S.C. § 841(a)(1); and use of a communication facility to facilitate drug felony, in violation of 21 U.S.C. § 843(b).  In December 2002, he was sentenced to 110 months' imprisonment followed by five years of supervised release.  See United States v. Berry, et al., No. 2:01-CR-545.

Should Defendant choose to testify at trial, depending on the content of his testimony, the Court should permit the government to cross-examine him, pursuant to Federal Rule of Evidence 609, about these prior felony convictions.

A.    Applicable Law

Federal Rule of Evidence 609 governs the admissibility of evidence of prior convictions for impeachment purposes.  If the witness is a criminal defendant, evidence of a prior felony conviction is admissible "if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B).  Under Rule 609(a)(1), the "evidence" of prior convictions that may be admitted includes "the essential facts of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed." United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005); see also United States v. Brown, 606 F. Supp. 2d 306, 315–16 (E.D.N.Y. 2009) (same).

In weighing the probative versus prejudicial value of impeaching a defendant with a prior conviction, courts generally consider five factors: (1) the impeachment value of the prior crimes; (2) the date of the convictions and the defendant's subsequent history; (3) the degree of similarity between the past crimes and the charged crime, with dissimilarity favoring admission; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.  See, e.g., United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1977); Jones v. City of New York, No. 98-CV-6493 (LBS), 2002 WL 207008, at *2 (S.D.N.Y. Feb. 11, 2002); accord United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000); United States v. Smith, 131 F.3d 685, 687 (7th Cir. 1997).

As relevant here, if the later of the date of conviction or the date of the defendant's release from confinement for that conviction is more than ten years old, then, pursuant to Rule

609(b), evidence of the conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and the party seeking to offer it gives the opposing party reasonable written notice of its intent to use the evidence. Courts apply the same balancing test as that prescribed by Rule 609(a), but the heightened standard of Rule 609(b) requires that the evidence have more probative value than that required under Rule 609(a). See Brown, 606 F. Supp. 2d at 313. In addition, under Rule 609(b), a court must "make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice." Jones v. N.Y. City Health & Hosps. Corp., 102 F. App'x 223, 226 (2d Cir. 2004); cf. United States v. Payton, 159 F.3d 49, 57–58 (2d Cir. 1998) (upholding admission of a defense witness's 13-year-old convictions where the district court specifically found that witness's "credibility was 'crucial' because she would be testifying in direct contradiction to the government's witnesses on the key elements of the offense; the impeachment value of her convictions was substantial; and the government provided defendant with sufficient advance notice of its intent to use these convictions in her cross examination").

B.    Discussion

If Defendant chooses to testify at trial and opens the door in one of many potential scenarios (such as by denying any involvement in drug trafficking or claiming ignorance of how the criminal justice system works), the government should be permitted to cross-examine him regarding his prior felony convictions because the balancing of the factors enumerated above weighs in favor of permitting such inquiry.

First, with respect to the impeachment value of the prior crime, "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." United States v. Estrada, 430 F.3d 606, 617 (2d Cir. 2005); see also United States

v. White, 312 F. Supp. 3d 350, 353 (E.D.N.Y. 2018) ("It is well-settled that 'prior-offense evidence may in a proper case be admissible for impeachment, even if for no other purpose.'" (quoting Old Chief, 519 U.S. at 176 n.2)); United States v. Crumble, No. 18-CR-32 (ARR), 2018 WL 2016852, at *5 (E.D.N.Y. May 1, 2018) (underscoring that "the Second Circuit has 'admonished' district courts that even felonies that 'do not bear directly on honesty such as to be automatically admissible under Rule 609(a)(2) [] may nonetheless be highly probative of credibility'" (quoting Estrada, 430 F. 3d at 616)).   "The Second Circuit has recognized that offenses involving controlled substances can be valuable for impeachment purposes," particularly where the prior conviction involves more than mere possession.  White, 312 F. Supp. 3d at 359; see also, e.g., Hayes, 553 F.2d at 828 (finding conviction for drug smuggling probative of veracity and therefore admissible under Rule 609(a)(1)); United States v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977) (finding drug distribution conviction probative of veracity); Crumble, 2018 WL 2016852, at *6 (concluding that the defendant's "drug-trafficking conviction would likely be admissible to impeach his credibility if he testifies"); Daniels v. Loizzo, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (noting that a "drug conspiracy conviction ranks relatively high on the scale of veracity-related crimes").  Defendant's prior convictions would be especially probative of his credibility in the event he were to testify that he had never been involved in drug trafficking, always lived a law-abiding life, or was unfamiliar with the judicial process as such testimony would plainly contradict the fact of his prior convictions.  Cf. United States v. Chandler, No. 19-CR-867 (PAC), 2021 WL 1851996, at *3 (S.D.N.Y. May 10, 2021) (finding the defendant's motion to preclude cross-examination "about his prior [manslaughter] conviction is moot unless (1) he testifies and (2) he opens the door to that evidence (for example, by claiming that he has never possessed a gun, or has never engaged in violence)").

The second factor—the date of conviction and the defendant's subsequent history—admittedly do not weigh in favor of admission.  However, the third factor—dissimilarity to the current crimes—strongly weighs in favor of admission because Defendant's drug-related convictions are not similar to obstruction of justice and thus will not be admitted as propensity evidence with respect to the offense charged here.

The fourth and fifth factors—the importance of the defendant's testimony and the centrality of the credibility issue—also strongly weigh in favor of permitting the government to cross-examine Defendant about his prior convictions.  Whenever a defendant testifies and denies having committed the charged offense, he places his credibility directly at issue.  See United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995).  Regardless of the substance of a defendant's testimony, once he places his version of the events before the jury, his credibility becomes central to the jury's determination of the case.    To permit Defendant  to take the stand and appear "pristine" would be "unfair and misleading to the jury." Ortiz, 553 F.2d at 785.  In addition, should Defendant testify that he attempted to destroy Defendant's Phone for some unobstructive purpose, such as precluding law enforcement from seeing private photographs, claim an official proceeding was not reasonably foreseeable, or testify he did not act knowingly or corruptly, his testimony and his credibility will be at the forefront of the trial.  See, e.g.,  United States v. White, No. 08–CR–682 (NGG), 2009 WL 4730234, at *4 (E.D.N.Y. Dec. 4, 2009)  (admitting prior conviction for impeachment purposes where the fourth and fifth factors favored admission because "if [the defendant] testifies, he is likely to offer a version of events that is different from the three officers who will present the Government's case," and "[t]he question of his credibility will therefore be important to the jury"); Thomas, 214 F. Supp. 3d at 196 (concluding that "[t]he fourth and fifth factors strongly weigh in favor of admission because, "[i]f [the d]efendant testifies, his testimony

would likely contradict the testimony of the Government's witnesses" such that "evidence of [his] prior convictions would be highly probative for the jury to determine his veracity and credibility").

In sum, should he testify and open the door, the circumstances outlined above support a finding that the probative value of cross-examining Defendant about his prior convictions outweighs any prejudicial effect of this evidence, and the government thus should be permitted to cross-examine Defendant regarding these prior convictions.

VI.    DEFENDANT SHOULD BE PRECLUDED FROM ARGUING THAT HIS ATTEMPT TO DESTROY DEFENDANT'S PHONE WAS HARMLESS.

Defendant's attempt to destroy Defendant's Phone ultimately failed because law enforcement prevented the compete destruction of the device and the FBI subsequently has been able to access some of the contents of Defendant's Phone pursuant to the Search Warrant.  The Court should preclude Defendant from arguing to the jury that his failure to destroy Defendant's Phone and prevent law enforcement's from accessing its contents somehow provide a defense to the charged crime.

First, Defendant is charged with attempted obstruction of justice, see ECF No. 12, and the relevant statute expressly criminalizes "attempts" to, inter alia, destroy an object, 18 U.S.C. § 1512(c)(1).  Indeed, the elements of the charged offense simply require that Defendant attempted to destroy Defendant's Phone with the corrupt intent to impair its integrity in an official proceeding.  Vrancea, 2013 WL 57687, *2.  It is thus irrelevant whether Defendant actually destroyed Defendant's Phone or in fact impeded such a proceeding.  See, e.g., United States v. Johnson, 903 F.2d 1084, 1088 (7th Cir. 1990) (explaining that, under § 1512, "the focus is on the endeavor to bring about the proscribed result, rather than on the success of the endeavor"); United States v. Wilson, 796 F.2d 55, 57 (4th Cir. 1986) (underscoring that "[t]he success of an attempt or possibility thereof is irrelevant" because § 1512 "makes the endeavor a crime"); United States

24

v. Maggitt, 784 F.2d 590, 593 (5th Cir. 1986) (explaining that, under § 1512, "it is the endeavor to bring about a forbidden result and not the success in actually achieving the result that is forbidden"). Moreover, arguments about Defendant's lack of success in destroying Defendant's Phone or impeding an official proceeding are likely to confuse and mislead the jury and to waste time. See Fed. R. Evid. 403. For these reasons, such improper argument should be precluded.

VII. **DEFENDANT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE OR ARGUMENT CONCERNING POSSIBLE PUNISHMENT AND COLLATERAL CONSEQUENCES.**

The Court should preclude Defendant from referencing at trial any consequences that may follow in the event of conviction.

As an initial matter, evidence regarding possible consequences a defendant may face if convicted should be precluded because it is not relevant to the question of his guilt or innocence. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task."). In addition to being irrelevant, such evidence inappropriately "invites [jurors] to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." Id. A jury, therefore, should not be informed of the potential consequences of its verdict. See, e.g., id. (underscoring that a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts" (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464–65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

Accordingly, this Court should preclude any evidence of or reference to the potential consequences Defendant face—including in voir dire, jury addresses, cross-

examination, and Defendant's own testimony—on the well-established grounds that such information is irrelevant, unfairly prejudicial and outside the province of the jury.

VIII.    THE COURT SHOULD PRECLUDE QUESTIONING REGARDING THE IDENTITY AND BACKGROUND OF A CONFIDENTIAL INFORMANT.

The government's underlying narcotics-related investigation involved the use of a confidential informant who provided information to the FBI, some of which was incorporated into the application for the Search Warrant.  At this time, the government does not intend to call the confidential informant to testify, or otherwise reference the confidential informant, during the government's case-in-chief.[3]  Accordingly, Defendant should be prohibited from asking any witnesses with knowledge of the confidential information on cross-examination about the identity or background of the confidential informant, including efforts to challenge the confidential informant's credibility.

A.    Applicable Law

The Supreme Court has long recognized the government's right to "withhold from disclosure" the identities of people who provide information about violations of the law.  See, e.g., Roviaro v. United States, 353 U.S. 53, 59 (1957) (citing Scher v. United States, 305 U.S. 251, 254 (1938)).  This practice is intended to further society's interest in "effective law enforcement" and to encourage citizens to perform what the Supreme Court deems "the obligation" to provide information about crimes.  Id.  Courts recognize the government's strong interest in preserving an informant's anonymity because "withholding an informant's identity improves the chances that such person will continue providing information and encourages other potential informants to aid

---

[3]    The government reserves the right to call the confidential informant to testify in the government's rebuttal case should it be necessary, including, for example, if Defendant were to testify that he had not been involved in distributing drugs in the period leading up to the execution of the Search Warrant.

the government." United States v. Barret, 824 F. Supp. 2d 419, 441 (E.D.N.Y. 2011) (quoting United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997)).  The government's ability to shield the identity of an informant is not absolute and disclosure may be required when the identity of an informant "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  See United States v. Jackson, 345 F.3d 59, 69–70 (2d Cir. 2003) (quoting Roviaro, 353 U.S. at 60–61).

A district court has "wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things . . . witness'[s] safety."  United States v. Elfgeeh, 515 F.3d 100, 124 (2d Cir. 2008) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  Even when the witness in question is testifying at trial against the accused—which would not be the case here—narrowly tailored limitations on cross-examination are appropriate.  See United States v. Al-Farekh, 810 F. App'x 21, 26 (2d Cir. 2020) (citing United States v. Watson, 599 F.2d 1149, 1157 (2d Cir. 1979)).  In certain circumstances, the government's interest in protecting the identities of witnesses is so strong that the court would be justified in closing the courtroom during portions of testimony.  See Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) (upholding the closure of a courtroom during testimony by undercover police officers).

B.    Discussion

Here, precluding questioning relating to the confidential informant is necessary to protect the safety of that individual and/or their family, as well as the integrity of ongoing and future investigations.  Given that the government does not plan to call the confidential informant to testify in its case-in-chief, there is no argument that the informant's identity or background relates to a possible defense or is "essential to a fair determination" in this case.  See Jackson, 345 F.3d at 69–70 (quoting Roviaro, 353 U.S. at 60–61).  Moreover, any cross-examination regarding

the credibility of the confidential informant would constitute an improper attempt to undermine the validity of the Search Warrant, which, as discussed below, Defendant elected not to challenge in any pre-trial motion.

Accordingly, the government requests that the Court prohibit any cross-examination about the confidential informant's identity or background, to include any efforts to challenge the confidential informant's credibility.

IX.     DEFENDANT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF A PRIOR CRIMINAL CASE THAT WAS DISMISSED.

In 2016, a grand jury sitting in the Southern District of New York returned a superseding indictment charging Defendant with conspiracy to distribute cocaine and heroin, in violation of 18 U.S.C. § 846.  Following a recommendation from the United States Attorney's Office on the basis that a key witness in the case could no longer be located, an order of nolle prosequi was entered in 2017.  See United States v. Gonzalez, et al., No. 1:16-CR-554 (the "SDNY Case").

The Court should preclude Defendant from offering evidence or otherwise referencing the SDNY Case or fact of its dismissal as irrelevant and likely to confuse the issues and mislead the jury.

A.      Applicable Law

It is well-established that evidence of a prior acquittal of charges is irrelevant to the issues at a later trial, see, e.g., United States v. Viserto, 596 F.2d 531, 537 (2d Cir. 1979) ("[A] judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted."); United States v. Ashburn, No. 11-CR-303 (NGG), 2015 WL 729818, at *2 (E.D.N.Y. Feb. 19, 2015) ("The Second Circuit has long held that absent claims of preclusion . . . evidence of prior acquittals is not relevant at trial."), and "evidence of charges that

were dropped for unknown reasons is even less relevant than an acquittal," United States v. Bracy, No. 20-CR-483 (ARR), 2022 WL 17801133, at *8 (E.D.N.Y. Dec. 19, 2022).  Moreover, such evidence creates a significant danger of unfair prejudice, confusion of the issues and misleading the jury.  See, e.g., United States v. Gambino, 818 F. Supp. 536, 539 (E.D.N.Y. 1993) ("[E]ven if such evidence [of a prior proceeding] had any evidentiary value, the danger it would present for confusion of the issues and misleading the jury substantially outweighs its probative worth."); accord United States v. Jones, 808 F.2d 561, 567 (7th Cir. 1986) (affirming exclusion of prior acquittal evidence given, inter alia, "the potential for prejudice was obviously substantial").  In addition, evidence of a prior proceeding also constitutes inadmissible hearsay.  See, e.g., Viserto, 596 F.2d at 537 (underscoring that evidence of a prior acquittal is also inadmissible as hearsay evidence since "[t]he Federal Rules of Evidence except from the operation of the hearsay rule only judgments of conviction (citing Fed. R. Evid. 803(22))); Bracy, 2022 WL 17801133, at *8 (noting that evidence of a dismissal of state charges is hearsay).

    B.    Discussion

        Under this well-established case law, the Court should preclude Defendant from referring to the dismissal of the SDNY Case.  As in the decisions cited above, any evidence or argument concerning the dismissal is immaterial to the issue of guilt or innocence in this case. See, e.g., Bracy, 2022 WL 17801133, at *8 (granting motion to preclude evidence relating to a state prosecution because "[t]he fact that the state charges were dismissed . . . is not relevant to his culpability for the charged offenses [at issue]").  Indeed, any reference to the SDNY Case would only confuse the jury by improperly suggesting there is some relevance to the dismissal of an entirely unrelated proceeding and that the jury should rely on that fact, as opposed to the actual evidence presented at trial on the charged offense here.  Moreover, reference to the dismissal of

the SDNY Case could cause the jury erroneously to believe Defendant was the target of government overreach.  See Gambino, 818 F. Supp. at 539.  The Court thus should preclude this improper strategy at the outset.

X.    **DEFENDANT SHOULD BE PRECLUDED FROM LITIGATING LEGAL ISSUES BEFORE THE JURY.**

The Court should preclude Defendant from arguing, or otherwise asserting or suggesting, before the jury that the government's use of certain investigative techniques— including the Search Warrant—to obtain evidence was unlawful or otherwise improper.  Such arguments are untimely and also irrelevant to the central question of Defendant's guilt.

First, to the extent Defendant did not timely file any suppression motion regarding certain evidence in this case, such litigation is now untimely, and Defendant thus waived his right to raise legal issues regarding suppression.  See United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) ("The failure to file a timely motion [to suppress] constitutes a waiver."); United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (finding waiver where the defendant filed a suppression motion three weeks after the court-imposed deadline for such motions).

Second, any such arguments are irrelevant under Rule 401 because they have no bearing on the material facts the government will prove to demonstrate Defendant's guilt.  Even if such arguments were relevant (which they are not), putting them before the jury would be more prejudicial than probative and risk confusing the issues or misleading the jury.  See Fed. R. Evid. 403.

Lastly, such legal issues are outside the scope of what the jury should hear.  See, e.g., United States v. Stein, 473 F. Supp. 2d 597, 601 (S.D.N.Y. 2007) (explaining that "a question of law for the Court" is "a matter on which it would be inappropriate to take evidence before a jury").  Rather, matters going to the lawfulness of the government's collection of evidence in this

investigation are "preliminary questions," which should have been raised by Defendant and resolved by the Court prior to a jury trial.  See Fed. R. Evid. 104.  Permitting the argument that evidence was illegally obtained by law enforcement would flout Rule 104 and improperly invite a mini-trial on the scope of the Fourth Amendment.  Such argument is outside the province of the jury, which is to determine whether Defendant committed the crime at hand based on the evidence presented.  Cf. Jury Instructions, United States v. Pikus, No. 16-CR-329 (AMD) ("[A]ny evidence that was presented to you was obtained legally and you can consider it.")

Accordingly, the Court should preclude Defendant from litigating before the jury any legal issues that could have been raised in pre-trial motions.

CONCLUSION

For the reasons set forth above, the government's motions in limine should be granted.

Dated:    Brooklyn, New York
          September 16, 2024

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:    ___/s/_____
       Sara K. Winik
       Rebecca M. Schuman
       Assistant United States Attorneys
       (718) 254-7000

31